## HARRY L. GLADDING et al. v. LANGRALL, MUIR & NOPPINGER

[No. 998, September Term, 1976.]

*Decided May 19, 1977.*

---

The cause was argued before MENCHINE, LOWE and MELVIN, JJ.

*Bayard Z. Hochberg* for appellants.

*Rob Ross Hendrickson,* with whom were *Henry M. Decker, Jr.* and *Frank M. Benson, Jr.* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

·The interesting facts of this case are overshadowed by a procedural consequence which will compel reversal. The facts are simply that the accounting firm of Langrall, Muir & Noppinger (Langrall) recovered a $30,639 judgment in the Superior Court of Baltimore City against appellants Harry L. and Virginia L. Gladding (Gladdings) for some 17 hours of accounting work. Langrall's total fee of $40,639 [1] represented an amount that had been contingent upon whatever sum was saved by its joint effort with the law firm of Venable,

1. The Gladdings had already paid Langrall $10,000 as a retainer.

Baetjer and Howard in protesting an assessment of approximately $1,300,000 against the Gladdings by the Internal Revenue Service.

The Gladdings did not question that the protest had resulted in a large recovery, or Langrall's computation of its contingent share, but did question whether Langrall had provided its "very best efforts" as accountants in the tax case, which it had by its contract guaranteed to do. Because Langrall twice declined to assist the law firm in preparing the protest when requested, compelling the Gladdings to seek accounting assistance elsewhere, the Gladdings' chagrin at the judgment is hardly frivolous.[2] However, our review on the merits — were we to reach them — would not have permitted us to substitute our opinion for the trial judge's. We are only empowered to ascertain whether the record contains any evidence sufficient to warrant the decision below. Stated otherwise, our task is to determine whether the trial judge below was clearly erroneous, Md. Rule 1086, and unless he was, we are compelled to affirm his judgment notwithstanding our personal views.

But before we reached that review, appellants Gladding contended that the case should never have been tried for procedural reasons. Md. Rule 530 provides that if no "proceedings of record" have taken place for a period of eighteen months, a pending action shall be subject to dismissal for lack of prosecution, and "nothing except the presence of proceedings of record will toll the operation of Rule 530". *Stanford v. District Title Insur.*, 260 Md. 550, 555. The declaration was filed on May 21, 1973. Because the record reflected no "proceedings" after August 23, 1973, the clerk of the court on August 26, 1975 notified the parties, in accordance with the rule, that an order for dismissal for lack of prosecution would be entered in 30 days.

Although self-executing, the rule does permit a reprieve under proper circumstances upon motion filed within 30

---

2. In addition to the matters discussed at length hereinafter, appellants raise a number of contentions upon appeal relative to the merits of both Langrall's claim and the Gladdings' counter-claim. In view of our decision in this case we will neither decide nor discuss these contentions.

days after service of the notice of contemplated dismissal. On September 25, 1975 Langrall moved to suspend the dismissal. On the same day the motion was granted *ex parte* for 90 days; however, three days later the Gladdings answered the motion to suspend and prayed a hearing of which there is no record but to which an allusion is made in the subsequent order as having transpired on November 26, 1975. On December 15, 1975 the court struck the September 25th *ex parte* suspension order, and ordered that the case "be not dismissed under Rule 530, Maryland Rules of Procedure, for a period of six (6) months from the date hereof." There is no record of what transpired at that hearing but we were told in the briefs and at oral argument that it consisted of an informal in-chambers discussion between court and counsel.

The question before us is whether there was any showing of "good cause" by appellee, which is a prerequisite to the trial court's exercise of discretion in suspending the automatic dismissal:

> "On motion filed at any time prior to thirty days after service of such notice, computed according to section c 3 of Rule 306 (Presumptions in Case of Service by Mail), *the court for good cause shown may suspend the operation of this Rule.* The order of suspension shall prescribe the duration and any other terms of the suspension." (emphasis added). Md. Rule 530 c.

All concede that a judicial exercise of discretion will not be set aside on appeal except in extreme cases of abuse. See *Tydon v. Spong*, 237 Md. 107, 110-111; *Cooney v. Bd. of Co. Comm'rs*, 21 Md. App. 57, 60. However, the discretion exercised under Md. Rule 530 is far more limited than that exercised pursuant to the court's revisory power under Md. Rule 625 a. The broader revisory power discretion should be liberally exercised, *Eshelman Motors v. Scheftel*, 231 Md. 300, in cases where meritorious and substantial reasons are shown. *J. B. Corporation v. Fowler*, 258 Md. 432. But unless there is *some* showing of good cause under Md. Rule 530,

there can be no discretion for the court to exercise.[3] **We are therefore called upon in this case to determine first, what will constitute "good cause" and, secondly, whatever it is, if there was any showing of it to the court below.**

## Good Cause

Md. Rule 530 c requires the party desiring suspension of the dismissal to take affirmative action by motion before the court's discretion may be exercised. Because the Court of Appeals made no attempt to define "good cause" in its rule, but committed that determination to the court's discretion, we might assume that it was the Court's intent to give a trial judge broad authority to forgive the neglect of a case which its rule condemns. *Cf. Madore v. Baltimore County*, 34 Md. App. 340, 346. That assumption, however, is not warranted because although the Court did not define the term by rule, it has since restricted its meaning by case law, while affirming the notion that suspending the dismissal is discretionary. After explaining the underlying purposes of the dismissal rule in *Stanford, supra*, 260 Md. at 555, Judge Digges turned his attention, on behalf of the Court, to the narrowness of the escape route provided by the rule:

> "Seizing upon eighteen months as the utmost reasonable time period in which a case can be permitted to remain catatonic, *that rule permits the trial judge to allow a brief reprieve where it is affirmatively demonstrated that total inaction has been justified.* The decision to permit the redemption of a cause lost through delay involves subtle judgment, requiring the trial judge to balance the individual litigant's right to ultimately

---

**3.** Ironically, the limitations upon the exercise of judicial discretion under Md. Rule 530 c. would seemingly not apply where a judge exercises his revisory power under Rule 625 a., even over the final judgment effected by a dismissal. See Owen v. Freeman, 279 Md. 241. Theoretically, a trial judge might be compelled to deny a motion to suspend Rule 530 for want of a showing of good cause, but could revitalize the dormant case under his broader discretionary authority of Rule 625 a.

have his day in court against the public's paramount interest in insuring that all citizens can obtain a prompt resolution of conflicts while they still remain current. *The primary focus of his inquiry should be on diligence* and whether there has been a sufficient amount of it during an eighteen month period of inaction for the court to affirmatively conclude that the case should not be automatically dismissed. That decision, whatever it may be, rests in the sound discretion of the trial judge and we will only invade his province on appeal in extreme cases of clear abuse." (emphasis added).

Thus, while the Court of Appeals has assured us that the suspension of a dismissal under Rule 530 remains discretionary, it has also, by its careful language, made it evident that such discretion may be exercised only within the niggardly limits set forth. We, therefore, conclude that the good cause rack which the moving party must provide upon which a trial judge may hang his discretionary hat in the absence of proceedings of record, must consist of some showing of diligence in moving the case forward, which was not reflected by the record. Whether such conduct is diligent, of course, must depend upon the circumstances of each case and its effect under the circumstances is measured by the court's discretion.

We have carefully chosen the words "some showing" rather than "some evidence" of diligence because of the nature of the review reflected by *Tydon v. Spong, supra.* Although the Court in that case was not confronted with Md. Rule 530, it had before it a comparable local dismissal rule and affirmed reinstatement under that rule. But if we look to it for guidance in seeking the evidentiary limitations upon us when reviewing an exercise of discretion under a dismissal rule, it appears there is very little upon which we cannot rely for a showing of good cause. There, the Court, speaking through Chief Judge Hammond, expressly sought

its jurisdiction in the petition, the answer, statements of fact in the briefs and apparently assertions at argument:

> "In the present case *the allegations of the petition to reinstate and of the answer thereto, considered with the statements of fact in the brief and at the argument, on which the parties did not differ significantly or materially,* lead us to believe that Judge Hamill could properly have concluded that counsel for the plaintiff in Garrett County, in good faith and with reason, believed as a result of his negotiations and conversations with his brother at the Garrett County bar who represented the defendant, it would not be necessary to take action as to the status of the case until either a settlement had been reached or a trial date agreed on." (emphasis added). 237 Md. at 111.

Nor do the parties here "differ significantly or materially" upon that which transpired below. Although it is inconceivable that the Court of Appeals would consciously indicate that we should hold what would be in effect a *de novo* review on appeal, without even evidentiary safeguards, the case before us is so wanting in good cause as to permit our indulgence and still arrive at the same result. Thus, recognizing the probable error of our ways in so favoring appellee's cause, we come down on the side of prudence. We, too, shall fling our evidentiary net broadcast, but in light of *Stanford, supra,* must limit our catch to indicia of diligence. Recognizing that the Rule clearly places the burden of showing its "good cause" for the relief prayed upon the moving party; and, because there was no evidence offered by appellee, no affidavits filed, no transcript of what transpired in chambers, and no reasons for the decision set forth by the judge, we search for whatever we can find in appellee's unverified Motion to Suspend Rule 530 (despite its failure to conform to the Md. Rule 321 b.[4]), the briefs, and the arguments of counsel as best we can recall them.

---

4. Md. Rule 321 b. provides in pertinent part:

"A motion need not be supported by affidavit unless it is founded on facts not apparent from the record or from papers on

Inversely, we recall no oral assertions of diligence. Appellee's brief sets forth no facts or arguments directed to convincing us of diligence during the fateful period. It is limited to a speculative apologia for the trial judge. Appellee suggests that the judge may have considered that because limitations had not run, dismissal, being without prejudice, would simply result in a refiled action, which would not effect the purpose of the rule in clearing up the "paper log jam" (see *Mut. Benefit Soc'y v. Haywood,* 257 Md. 538, 539), but would instead prolong it by starting all over. Appellee further argues that the case is not a "dead" case, which it contends from its reading of *Stanford, supra,* to be the focus of Rule 530. Assuming but certainly not agreeing with these premises, they clearly do not effect a showing of diligence and thus "good cause".

Nor is that showing made by appellee's factual arguments advanced in support of its motion to suspend Rule 530. It argues here and (with the exception of the last) assigned as reasons below, that:

1. Appellee's unresolved motion for summary judgment was pending without a hearing having been set;
2. the Gladdings took three depositions during the hiatus;
3. the litigation was of a complex nature requiring financial analysis as revealed by the Gladdings' depositions;
4. counsel's calendar was congested; and
5. the court below had the benefit of the presence of counsel at the hearing of whom it could inquire for any relevant matters it wished to consider.

We find ourselves reflecting, as did Alice after she had read Jabberwocky in Lewis Carroll's *Through The Looking-glass*:

"'It seems very pretty' she said when she had

---

file in the proceeding. In such event the motion shall be supported by affidavit and shall be accompanied by the papers on which it is based."

finished it, 'but it's *rather* hard to understand! Somehow it seems to fill my head with ideas — only I don't exactly know what they are.' "

First, appellee's unresolved motion for summary judgment is as much its responsibility as the unresolved case itself. See *Cooney v. Bd. of Co. Comm'rs, supra,* 21 Md. App. at 59-60. Secondly, how the Gladdings' taking of depositions indicates Langrall's diligence is *"rather* hard to understand." Thirdly, that appellee only realized the complexity of the case after the depositions taken by the appellants seems quite the contrary of diligence, and if counsel's congested calendar is good cause for overriding the dismissal rule established to overcome delay, the Court of Appeals had best repeal its rule. Finally, we cannot speculate what the court may have asked counsel at the informal hearing when there is neither record nor proffer that anything *was* expressed. We have sought support for the judge from every conceivable source, but we will not speculate upon "what ideas might have filled his head", nor can we guess what he might have asked counsel, but did not.

In concluding, we note that whether *Stanford, supra,* constrains the showing of good cause to the context of diligence as we have held is not controlling under the facts of this case. We need no authority but common sense to hold that a showing of *good* cause presupposes a showing of *some* cause, and nowhere in the broad sweep of our search have we found any cause for the delay beyond a tough case for busy lawyers.

### Motion to Dismiss

Appellee moved to dismiss that portion of the appeal dealing with the order reinstating the case, pursuant to Md. Rules 1028, 1035 and 1036, on the gound that the appellants did not provide any record upon which this Court may sufficiently determine the basis of the trial judge's ruling. Md. Rules 1035 and 1036 permit a dismissal for (among

other reasons) failure to comply with Md. Rule 1028. That rule requires extracts in every civil case of

"such parts of the record as may reasonably be necessary for the determination of the questions presented by the appeal . . . ."

Expressly required to be included in the record extract is the judgment appealed from and the opinion or charge of the lower court, if any. Furthermore, it is to include:

"So much of the evidence, pleadings or other parts of the record as is material to any question the determination of which depends upon the sufficiency of the evidence, pleadings or other matter contained in the record to sustain any action, ruling, order or judgment of the lower court."

Appellants have complied to the best of their ability with these rules. The extract includes all of the relevant record that exists — that is, there was nothing before the trial judge that is not in the record extract, and thus before this Court.

In response to the motion to dismiss, appellants conceded that counsel had an in-chambers meeting with the court on November 26, 1975, which was presumably the meeting referred to in the December 15, 1975 order as "Date of Hearing: November 26, 1975", although the docket did not reflect a hearing entry on that date. Appellants' answer to the motion to dismiss (of which we take cognizance pursuant to *Tydon v. Spong, supra*), asserts that at this meeting no testimony or other evidence was either given or proffered and no stenographer was present. The answer states that "Counsel again advised the Court of their respective positions *based on the file before the Court.*" (emphasis added). In short, the parties submitted on the record.

Although appellee did not "differ significantly or materially" with appellants' assertions of what transpired (or did not transpire) below, either by brief or in argument,

it points out that on appeal appellants have the burden of proving that the ruling of the trial court was an abuse of discretion, *Franceschina v. Hope*, 267 Md. 632, and this burden includes the responsibility of preparing the record extract to reflect that abuse. Citing case examples, appellee contends that we should dismiss the portion of the appeal dealing with Md. Rule 530 because appellants failed to provide "adequate record extracts". The cases upon which appellee relies each had as their basis of dismissal or restricted view of an issue the failure of the appellant to provide extracts on appeal of that part of the record upon which they relied. *E.g., Carroccio v. Thorpe*, 222 Md. 38, 42 (testimony taken at summary judgment hearing but not transcribed); *Naughton v. Paul Jones & Co.*, 190 Md. 599, 603 (sufficiency of the evidence appealed without the evidence or testimony provided the reviewing Court).

While it is apparent that the Court of Appeals will not excuse an appellant's failure to provide extracts on appeal because that upon which he relies was not transcribed below, these rulings presuppose that there was something below to record or transcribe. In *Newark Trust Co. v. Trimble*, 215 Md. 502, 505-507, for example, the appellant challenged the action of the trial court in striking out a confessed judgment. But because the record contained no transcripts of the proceedings at the hearings on the motion to strike, the Court of Appeals held that appellant, in waiving its right to a stenographer at the hearings, had made it impossible for the Court to review that which did not exist. Similarly in this Court, we decided not to review a denial after hearing of a motion to change venue in *White v. State*, 8 Md. App. 51, 54, because appellant had not provided a transcript of the testimony at the hearing. The opinions in both of these cases made it quite clear that there had been testimony at an evidentiary hearing which could have been transcribed.

Even those related cases which dismissed appeals or declined to consider issues, for failure:

to extract pleadings from the original record, *A. S. Abell Co. v. Skeen*, 265 Md. 53, 55;

to transcribe an oral opinion, *Basiliko v. Royal Nat'l Bank,* 263 Md. 545, 548-549; or

to include in the record a stipulation upon which the lower court's decision was in part based, *Dormay Corp. v. Doric Co.,* 221 Md. 145, 149,

all presuppose a sometime availability of something upon which appellant relies upon appeal. By contrast, appellants in the case at bar rely on the *absence* of anything upon which the court they have charged with error could have based its decision. They contend that nothing transpired at the November 26, 1975 in-chambers conference but a submission upon the record by the parties:

> "Judge Murphy's ruling below had to be based solely on the file and record before him in that there was [a] total absence of anything further to be considered."

Their record extract, they assert, complies with Rule 1028 in that it contains all of the record proceeding below material to the question concerning the application of Rule 530, and nothing further was offered to, or placed before, the trial judge for his consideration.

We agree. The original burden upon appellee as movant under Md. Rule 530 was to show good cause, without which there was no discretion in the court to exercise. It would be ridiculous to hold that because the appellants did not have transcribed that which they charge the appellee with failing to produce, we must dismiss the appeal.

Although the burden is upon appellants to convince this Court that there was *no* showing of good cause by appellee to justify the court's reinstatement of the case, we repeat for emphasis that appellants cannot carry that negative burden by providing something where nothing exists. Appellants' contention upon appeal is founded upon the failure of appellee to meet is burden upon motion below of showing good cause. It was solely upon such showing that the court was justified in exercising its discretion. By appellants'

assertion of the absence of any such showing, we think appellee must point to some evidence of good cause it tendered the court below and upon which it asserts would sustain that court's judgment, or, at the very least, proclaim to this Court that such evidence did exist. The original and complete record in this case (which we have reviewed in its entirety in light of appellee's motion to dismiss) disclosed nothing which the appellants have failed to extract pursuant to Md. Rule 1028, nor is there a hint by appellee that evidence was offered that was not transcribed.

The authorities cited in the motion to dismiss this point of the appeal are inapposite to the factual posture here. We deny that motion because Md. Rule 1028 was not intended as a device to permit a moving party to shift its burden below to another on appeal by its own failure to produce that which is prerequisite to the relief it prays.

### Mandate

We vacate the judgment on the merits entered on August 4, 1976. We reverse that portion of the ruling of the court on December 15, 1975 which suspended Md. Rule 530 for six months, but affirm the granting of appellants' motion to strike the order of September 25, 1975; and, we direct the Superior Court of Baltimore City to dismiss the case including the appellants' counterclaim in accordance with Rule 530.

> *Motion to dismiss appeal denied; order of August 4, 1976 vacated; order of December 15, 1975 reversed in part and affirmed in part; case remanded for entry of dismissal pursuant to Md. Rule 530; costs to be paid by appellee.*