## LANGRALL, MUIR & NOPPINGER *v.* HARRY L. GLADDING ET AL.

[No. 74, September Term, 1977.]

*Decided April 21, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Rob Ross Hendrickson,* with whom were *Henry M. Decker, Jr.,* and *Frank M. Benson, Jr.,* on the brief, for appellant.

*Bayard Z. Hochberg* for appellees.

COLE, J., delivered the opinion of the Court. LEVINE, J., dissents and filed a dissenting opinion at page 403 *infra.*

This appeal seeks to restore life to a cause of action pronounced dead by the Court of Special Appeals which invoked the sanctions of Maryland Rule 530. That rule provides that a proceeding in which there has been no activity of record for eighteen months may be dismissed for lack of prosecution, unless the court for good cause shown suspends the operation of the rule. We are asked to examine the body of facts surrounding this controversy to determine if any vital signs still remain.

This action was instituted by the appellant accounting firm of Langrall, Muir and Noppinger (Langrall) against appellees Harry L. Gladding and Virginia L. Gladding (Gladding) to recover the balance of a contingent fee ($30,639) for professional services rendered Gladding in successfully protesting an Internal Revenue Service assessment of approximately $1,300,000. The dispute arose because Gladding contended that Langrall had not rendered its very best efforts pursuant to the contract, forcing Gladding to hire additional accounting assistance in the tax case.

The significant docket entries reveal that Gladding entered his general issue plea and answer to Langrall's declaration and motion for summary judgment and also filed a counterclaim seeking return of the $10,000 retainer. Langrall answered the counterclaim on August 26, 1973. No further activity is reflected on the record until August 26, 1975 when the clerk mailed to all counsel notice of contemplated

dismissal under Rule 530 for lack of prosecution. Langrall filed a timely motion to suspend the Rule before Judge Jones, which motion was granted by ex parte order on the same day, suspending the Rule for ninety days. Four days later, Gladding filed his answer opposing Langrall's motion to suspend, his own motion to suspend the Rule as to his counterclaim and a motion to strike the ex parte order. On November 26, 1975, Judge James W. Murphy conducted a hearing on all pending motions. No stenographic record was made of this hearing. On December 15, 1975, Judge Murphy ordered that Judge Jones' ex parte order be stricken and that Langrall's declaration and Gladding's counterclaim "be not dismissed ... for a period of six (6) months from the date hereof." No further reasons for the rulings were stated.

On May 11, 1976, the action was tried before Judge Basil A. Thomas, without a jury. On July 30, 1976, the court rendered a decision in favor of Langrall. Gladding appealed to the Court of Special Appeals which reversed Judge Murphy's order suspending Rule 530 for six months, and directed the Superior Court of Baltimore City to dismiss the case including Gladding's counterclaim in accordance with Rule 530. The court, therefore, had no necessity to reach the merits of the issue. *Gladding v. Langrall, Muir & Nopp'r.,* 36 Md. App. 225, 373 A. 2d 958 (1977).

We granted certiorari.

The parties briefed and argued two questions:

1. Whether the Court of Special Appeals erred in reversing the discretionary order of the trial court in the absence of a showing of clear abuse.

2. Whether the motion to dismiss the appeal from the order of December 15, 1975, suspending the operation of Maryland Rule 530 should have been granted.

Because our consideration of the first question is dispositive of the matter before us, we shall not address the second.

The Court of Special Appeals followed the law of this Court in holding below that a prerequisite to the trial court's exercise of discretion in suspending the automatic dismissal

of Rule 530 is a showing of good cause; that this good cause must be evidenced by a display of diligence to prosecute the case during the period of alleged inaction; and that the trial court's exercise of discretion will not be set aside on appeal except in extreme cases of clear abuse, *Stanford v. District Title Ins. Co.,* 260 Md. 550, 273 A. 2d 190 (1971). The court then held that there was no record of the proceeding before Judge Murphy and thus it could not determine a showing of good cause, some cause, or any cause on the part of Langrall. The court concluded that the responsibility for production of this record was upon Langrall and because the record was bare, the case must be reversed.

In so holding, the Court of Special Appeals proceeded on the wrong premise. The burden of producing the record of any proceeding is upon him who would attack its sufficiency. By so holding, we do not retreat from our holding in *Stanford;* we reaffirm it. Judge Digges in delivering the opinion in that case said:

> "This Court is totally committed to the proposition that 'justice delayed is justice denied.' Rule 530 is the device by which the most intolerable delays . . . can be ultimately eliminated. . . . [T]hat rule permits the trial judge to allow a brief reprieve where it is affirmatively demonstrated [to him] that total inaction has been justified. . . . Th[e] decision, whatever it may be, rests in the sound discretion of the trial judge and we will only invade his province on appeal in extreme cases of clear abuse." 260 Md. at 554-55.

We placed the responsibility on the trial judge to weigh and balance the rights, interests, and reasons of the parties in light of the public demand for prompt resolution of litigation when inactivity characterized a cause of action. We suggested that the trial judge, on the scene, will have a perception and understanding of the legal environment in which the case is temporarily mired. Therefore, he was vested with the discretion to be exercised consistent with the spirit of the law

while subserving the ends of justice and fairness to the parties.

The Court of Special Appeals noted with particularity that the trial judge made no stenographic record nor did he outline his reasons for his action. Without question, the better practice for any trial judge when exercising his discretion under Rule 530 is to set forth the basis for his ruling on the record, with unmistakable clarity, orally or by memorandum opinion. However, it is the responsibility of the aggrieved party, the party claiming abuse, to preserve his objection for review.

To reach any other conclusion would reduce the exercise of a court's discretion to a meaningless gesture. This we cannot allow to happen. Discretion is the warp and woof of judicial fiber. It is the antithesis of arbitrariness and by its nature connotes the absence of capricious disposition. This is the reason we have held that the exercise of a court's discretion is presumed to be correct [1] until the attacking party has overcome such presumption by clear and convincing proof of an abuse. Gladding offers no such proof but contends that, since the trial court granted the motion to suspend Rule 530, the ruling was not final and appealable — that he could not require the court to state its reasons in compliance with Maryland Rule 18 b.[2] However, he can extract no comfort from this argument. He was the most knowledgeable party as to the ultimate effect of the court's ruling on his defense. If he felt abused, he had only to preserve the basis for his

1. In I. W. Berman Prop. v. Porter Bros., 276 Md. 1, 19-20, 344 A. 2d 65, 76 (1975), a case dealing with prejudgment interest, the late Judge O'Donnell, speaking for the Court, said:

"There is, of course, a presumption that the discretion vested in the trial court 'was not abused but was exercised with just regard to the rights and interest of both the plaintiff and the defendants,' (citation omitted). [T]hus the burden is *upon the appellant* of establishing that ... the trial court abused its discretion and worked an injustice to the appellant by its award of interest." (Emphasis added)

2. Maryland Rule 18 b reads as follows:

"Before or within fifteen days after entry of an appealable final judgment in a contested action tried upon the merits without a jury, the court shall dictate to the court stenographer or reporter, or prepare and file in the action, a brief statement of the grounds for its decision and the basis of determining the damages, if any."

contention by requesting the court to record its reasons for review. However, he made no such request and now, instead, invites the appellate court to rule in a vacuum. No court can perceive the subtlety of a trial court's judgment or understand the balancing factors employed by it from a silent record. However, in the instant case we do know that Judge Murphy examined the record, heard counsel in chambers, exercised judgment by striking Judge Jones' order [3] and passed his own order to be operative for a period of six (6) months. In light of the obvious attention Judge Murphy accorded this issue, we assume he was familiar with Rule 530 and acted within the scope of his authority.

We hold that absent a showing of a lack of good cause on the record before us, Judge Murphy is presumed to have exercised his discretion correctly. It follows, therefore, that on the record before it, the Court of Special Appeals was in error in reversing Judge Murphy's order suspending dismissal under Maryland Rule 530 and we reverse.

Since the Court of Special Appeals did not reach the merits of the cause before it, we will remand for that purpose.

> *Judgment of the Court of Special Appeals reversed and remanded to that court for further proceedings consistent with this opinion; costs to abide the result.*

---

3. Judge Murphy's striking of Judge Jones' order causes this Court no pause since he was obliged to do so if he concluded that it had been improvidently issued. The language used by the Court of Appeals in Insurance Co. v. Thrall, 181 Md. 19, 23, 27 A. 2d 353, 355 (1942), best describes our long standing position in this regard:

> "Trial courts are bound by the decisions of the Court of Appeals, until they may be overruled. Until then they are precedents to be followed and obeyed. There is no decision or statute which requires one *nisi prius* judge to accept as final and conclusive the decisions on the law before trial of another judge or court. There seems to be some sense, however, in the idea that the trial judge, who occupies a position of greater responsibility, should have the right to reject a prior decision of a judge of equal jurisdiction in the same case which he may believe to be erroneous."

*Levine, J., dissenting:*

Because in my view the result in this case reduces Maryland Rule 530 to a virtual nullity, I respectfully dissent.

The basic flaw in the majority opinion lies in its undue emphasis on the amount of discretion vested in the trial judge. At the same time, it merely pays lip service to the limitation in Rule 530 that its operation be suspended only where "good cause" is shown. Where, as in this case, the record is utterly barren of any circumstance sufficient to constitute good cause, no policy favoring the free exercise of judicial discretion can justify suspension of the involuntary dismissal rule.

The majority conspicuously avoids any reference to the four grounds cited by Langrall in support of its motion to suspend Rule 530. These were: that Langrall's very own motion for summary judgment filed with the original declaration two years earlier had never been scheduled for hearing; that three depositions had been taken — all at the instance of the Gladdings — during the two years following institution of the action; that the litigation was of a complex nature; and that the calendar of plaintiffs' counsel was congested. Even when considered collectively, the reasons offered by appellant were so grossly deficient in terms of satisfying the "good cause" requirement that the motion to suspend was simply unworthy of consideration.

"Good cause," when required to forestall dismissal of an action for want of prosecution, as in Rule 530 c, contemplates a "substantial reason" for suspension of operation. *State v. Churchill*, 82 Ariz. 375, 313 P. 2d 753, 756 (1957). "There must be *something* upon which a discretion can rest." *Dunsmuir Masonic Temple v. Siskiyou County Sup. Ct.*, 12 Cal. App.3d 17, 90 Cal. Rptr. 405, 407 (1970) (emphasis in original). As Judge Lowe stated below for the Court of Special Appeals, "a showing of *good* cause presupposes a showing of *some* cause." *Gladding v. Langrall, Muir & Nopp'r*, 36 Md. App. 225, 233, 373 A. 2d 958 (1977) (emphasis in original). The discretion vested in the trial judge in this context "is not an arbitrary or unrestrained discretion." *Little v. Sullivan*, 173 So. 2d 135, 136-37 (Fla. 1965).

This Court considered the "good cause" requirement in *Stanford v. District Title Insur.,* 260 Md. 550, 555, 273 A. 2d 190 (1971), where the dismissal of an action under Rule 530 was affirmed on appeal. There Judge Digges said for the Court:

> "[Rule 530 c] permits the trial judge to allow a brief reprieve where it is *affirmatively demonstrated* that total inaction has been justified. . . . The primary focus of his inquiry should be on *diligence* and whether there has been a sufficient amount of it during an eighteen month period of inaction for the court to *affirmatively* conclude that the case should not be automatically dismissed." (emphasis added).

The reasons advanced by Langrall simply do not withstand the scrutiny mandated by these requirements of Rule 530. What the Court of Special Appeals said in this regard is especially apposite:

> "First, [Langrall's] unresolved motion for summary judgment is as much its responsibility as the unresolved case itself. . . . (citation omitted) Secondly, how the Gladdings' taking of depositions indicates Langrall's diligence is 'rather hard to understand.' Thirdly, that [Langrall] only realized the complexity of the case after the depositions taken by [Gladding] seems quite the contrary of diligence, and if counsel's congested calendar is good cause for overriding the dismissal rule established to overcome delay, the Court of Appeals had best repeal its rule." 36 Md. App. at 233 (emphasis in original).

With this assessment of Langrall's reasons, I most certainly agree. Those grounds fell far short of that affirmative demonstration of diligence the rule required of Langrall during the two years its claim lay dormant.

I do not quarrel with a general presumption that the trial judge acts in the proper exercise of his discretion. But that presumption is not absolute and irrefutable. We should not

presume an exercise of sound discretion where, as here, the record affirmatively discloses a lack of diligence on the part of the plaintiff contrary to the requirement of the rule.

Nor do I question the proposition that it is the responsibility of the party who brings the appeal to furnish a transcript of proceedings in the trial court. This principle, however, should not be permitted to obscure the issue actually presented by this case, which is whether Langrall made an affirmative showing of good cause and not, as the majority apparently holds in contravention of *Stanford,* whether Gladding established "a lack of good cause."

Propounding what amounts to nothing more than a "red herring" argument, Langrall makes much of the fact that Gladding failed to produce a transcript of the proceedings before the trial judge; however, at no point does Langrall suggest that any testimony was ever presented in support of its motion to suspend. Absent any assertion to the contrary, I would refrain from engaging in fantastical speculation and would accept Gladding's representation that no such testimony was, in fact, ever produced. Indeed, as I view the record in this case, it is apparent that beyond the motion itself, nothing was offered to the trial judge save for mere argument of counsel.

Rule 321 b is explicit in providing that where a motion is founded on facts not apparent from the record or from papers on file in the proceeding, it "shall be supported by affidavit and shall be accompanied by the papers on which it is based." No such affidavit or papers are contained in the record here. *See Ventresca v. Weaver Brothers,* 266 Md. 398, 402, 292 A. 2d 656 (1972). Absent a stipulation by opposing counsel, any possible statements of fact made during the argument in chambers could not elevate the reasons set out in the motion here to a showing of good cause.

Since the record is absolutely devoid of any evidence tending to show that Langrall had good cause for failing to prosecute its claim, I find myself unable to agree with the majority's conclusion that the trial judge did not abuse his discretion in granting the motion to suspend operation of the dismissal rule. In my opinion, the majority's decision not only

may emasculate Rule 530, but may foster neglect and carelessness in the practice of law which, in light of present day sentiments, the legal profession can ill afford. Accordingly, I would affirm the decision of the Court of Special Appeals.