535 A.2d 503

Richard BYRNE

v.

AMALGAMATED TRANSIT WORKERS' UNION,
DIVISION 1300, AFL–CIO.

No. 510, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Jan. 12, 1988.

Robert G. Skeen (Harry Goldman, Jr., Marc D. Minkove and Goldman & Skeen, P.A., on the brief) Baltimore, for appellant.

Patty L. Parsons (Abato, Rubenstein and Abato, P.A., on brief) Lutherville, for appellee.

Argued by WEANT, ALPERT and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This is an appeal by Richard Byrne, appellant, from the judgment of the Circuit Court for Baltimore City granting a Motion to Dismiss for lack of prosecution, filed by Amalgamated Transit Union, Division 1300, AFL–CIO, appellee. Appellant asks us to address five questions, namely:

1. Did the lower court err in granting defendant Amalgamated Transit Union, Division 1300, AFL–CIO's motion to dismiss for lack of prosecution when no notice was served upon plaintiff by the clerk of the court?

2. Did the lower court abuse its discretion by failing to consider appellant's motion for deferral of dismissal?

3. Did the lower court err in requiring plaintiff to amend his pleading absent a time requirement imposed by the Court of Special Appeals' mandate?

4. Did the lower court err in dismissing the action without any showing by appellee that it had been prejudiced in any way?

5.  Did the lower court err in dismissing plaintiff's cause of action for failures attributable to his attorneys?

We believe, however, that stripped to the bare essential, the five questions constitute but one: whether the trial judge abused his discretion in dismissing appellant's action.

The seeds of this appeal were first sown in 1983, when appellee's demurrer to appellant's action against appellee for breach of duty of fair representation was sustained, without leave to amend.  Appellant had also sued the Maryland Transit Administration, his employer, as to which the court granted a Motion for Summary Judgment and Raising Preliminary Objection.  The latter judgment was affirmed by this Court.  *See Byrne v. MTA, et al.,* 58 Md.App. 501, 473 A.2d 956, *cert. denied,* 300 Md. 794, 481 A.2d 239 (1984). Appellee's demurrer was sustained because the court found that the federal statute, upon which appellant's suit was based, would not support a State cause of action where the federal court lacked jurisdiction.  Although we affirmed, on appeal, the sustaining of the demurrer, *Byrne v. MTA, et al.,* 58 Md.App. at 510, 473 A.2d 956, we reversed that portion of the judgment which denied appellant the opportunity to amend.  58 Md.App. at 509, 473 A.2d 956.  Our mandate issued on May 14, 1984.  Cross-petitions for Writ of Certiorari, filed by both appellant and appellee, were denied by the Court of Appeals on September 14, 1984. Appellant's Petition for Writ of Certiorari to the Supreme Court of the United States was likewise denied on April 15, 1985.

There having been no docket entries in the case since September 17, 1984, when the denial of certiorari by the Court of Appeals was noted, and no apparent activity in the case since the Supreme Court denied certiorari, appellee, on December 15, 1986, filed a Motion to Dismiss for lack of prosecution.  In the memorandum in support of the motion, appellee traced the procedural history of the case, concluding with a request that "pursuant to Rule 2–507(c), Maryland Rules of Civil Procedure, ... this cause of action be dismissed, with prejudice, since more than two years have

passed since the last docket entry in the above-captioned matter."

Appellant responded by filing an Answer to Motion Of Defendant Amalgamated Transit Union, Division 1300, AFL–CIO, To Dismiss For Lack Of Prosecution and Motion for Deferral Of Dismissal. Although he admitted the procedural history recounted by appellee, appellant complained that he had not received a trial date "pursuant to the Automatic Assignment System of the Circuit Court for Baltimore City" and averred that he "was under the impression that the Civil Assignment Office was sending out notices of a settlement conference and at the settlement conference, an agreed upon trial date was set." Appellant also alleged:

11. Plaintiff has a substantial and meritorious cause of action.

  a. This is an unfair labor representation case and the plaintiff alleges that because of the union's lack of adequate representation at an arbitration hearing that his position with Mass Transit Administration was terminated.

12. It would be in the interest of justice to allow this case to proceed to trial.

After a hearing, the trial judge granted appellee's motion and dismissed appellant's action, reasoning, in part:

The cert. petition was denied in 1985. This is now 1987. The plaintiff has slept on his rights. If he now is granted leave to amend, it would take a long time for everyone to digest the amendment, to go through the discovery period and deposition proceedings, and then have a trial date. I find that Mr. Byrne has waited for too long and the motion to dismiss is granted.

Yes, I have discretion. No, I am not inclined to use it any differently than how I read *Driver*[1].

---

[1]. *Driver v. Parke–Davis & Company*, 29 Md.App. 354, 348 A.2d 38 (1975).

The court also rejected appellant's contentions that he justifiably waited for the clerk to set a trial date and that it was appropriate for the clerk to set a trial date before appellant amended his cause of action. As to the latter point, the court stated:

> You are supposed to make the amendment before there is a trial date, so that they know what to defend against. They cannot defend against a cause of action that has been ruled on by the Court of Special Appeals to be insufficient.

> All the Court of Special Appeals gave you, in terms of life in the case, was an opportunity to amend. You cannot have a trial first and then the amendment second, not under these circumstances. Maybe in some other circumstance, where there is a proper cause of action and you go to trial and there is some reason to amend after the trial starts, but here, you want to put the cart before the horse. You want to have your trial on some non-existent cause of action and then amend it to an existent cause of action after the trial is over. You can not do that.

The comments of the court in colloquy with counsel suggest that its ruling was based on Md. Rule 2–507, as interpreted and applied by case law [2]. The court found *Driver* to be particularly instructive on the question whether a failure on the part of the court clerk to fulfill an obligation placed upon it relieved appellant of his obligation to proceed with the prosecution of his case. *See* 29 Md. App. at 359–60, 348 A.2d 38.

---

**2.** Among the cases mentioned during the hearing were *Stanford v. District Title Insurance Co.,* 260 Md. 550, 273 A.2d 190 (1971), *Driver v. Parke–Davis & Company,* 29 Md.App. 354, 348 A.2d 38 (1975); *Cooney v. Bd. of County Commissioners,* 21 Md.App. 57, 318 A.2d 231 (1974). The comments of the court, and those of counsel for appellee, reveal that great stress was placed upon the interpretation of *Stanford* to require that "nothing except the presence of proceedings of record will toll operation of Rule [2–507]". *Cooney,* 21 Md.App. at 59, 318 A.2d 231. *See Stanford,* 260 Md. at 555, 273 A.2d 190; *Driver,* 29 Md.App. at 360, 348 A.2d 38.

Maryland Rule 2–507, Dismissal For Lack of Jurisdiction Or Prosecution, provides, in pertinent part:

\* \* \* \* \* \*

(c) *For lack of prosecution.*—An action is subject to dismissal for lack of prosecution at the expiration of one year from the last docket entry, other than an entry made under this Rule, Rule 2–131, or Rule 2–132, except that an action for divorce a mensa et thoro or for permanent alimony is subject to dismissal under this section only after two years from the last such docket entry.

(d) *Notification of contemplated dismissal.*—When an action is subject to dismissal pursuant to this Rule, the clerk shall serve a notice on all parties pursuant to Rule 1–321 that an order of dismissal for lack of jurisdiction or prosecution will be entered after the expiration of 30 days unless a motion is filed under section (e) of this Rule.

(e) *Deferral of dismissal.*—On motion filed at anytime before 30 days after service of the notice, the court for good cause shown may defer entry of the order of dismissal for the period and on the terms it deems proper.

(f) *Entry of dismissal.*—If a motion has not been filed under section (e) of this Rule, the clerk shall enter on the docket "Dismissed for lack of jurisdiction or prosecution without prejudice" 30 days after service of the notice. If a motion is filed and denied, the clerk shall make the entry promptly after the denial.

The most recent statement of the application of this rule was made by the Court of Appeals in *Powell v. Gutierrez,* 310 Md. 302, 529 A.2d 352 (1987). Because we believe the application of the rule to be germane to the resolution of the issue before us, we will review the teachings of that case.

In *Powell,* after plaintiff had filed a negligence action against defendant and the defendant had counter-claimed and served interrogatories on the plaintiff, the docket record for the case lay dormant for more than a year. In response to the clerk's notice of impending dismissal for lack of prosecution, the plaintiff moved, pursuant to Rule

2–507(e), to defer dismissal, representing that he was in the process of answering interrogatories and that he was ready diligently to pursue his claim. The court denied the motion, finding that the plaintiff had not shown "any cause for deferral of dismissal". The Court of Appeals was thus squarely presented with the question of "what standard a trial judge should use when ruling on a motion to defer dismissal for lack of prosecution under Maryland Rule 2–507(e)." 310 Md. at 304, 529 A.2d 352.

■ In reversing the judgment of the trial court, the Court clearly stated the purpose of the Rule and its predecessor, Rule 530:

> Neither Rule 530 nor Rule 2–507 was promulgated to penalize plaintiffs for having lax attorneys. Their primary focus was on pruning the docket of dead cases. A dead case is one in which neither party demonstrates an interest in having the issue resolved. This circumstance occurs for varying reasons, *i.e.* the parties may leave the jurisdiction, they may settle their dispute, or other circumstances may make the issue no longer viable. In any event, parties often neglect to dismiss their suits when their reasons for further prosecution have dissipated. These are the kind of cases that Rule 2–507 was devised to eliminate under a simple procedure.

310 Md. at 308, 529 A.2d 352. Therefore, the Court said, while the passage of twelve months provides a signal to the clerk that a case may be dead and ready for dismissal, "docket inactivity in a case for twelve months is not an absolute indicium of a loss of litigious vitality". 310 Md. at 307, 308, 529 A.2d 352. Thus, it is not a basis for automatic dismissal. Where a party files a motion to defer dismissal, only when the court has determined that "good cause" has not been shown may the case be dismissed for lack of prosecution. On the other hand, failure to file a motion to defer dismissal, because it confirms the lack of "litigious vitality", results in the automatic dismissal of the claim. 310 Md. at 308, 529 A.2d 352.

Regarding "good cause," the Court instructed:

To show "good cause", the party filing a motion to defer dismissal must demonstrate to the court that he is ready, willing, and able to proceed with the prosecution of his claim and that the delay in prosecution is not wholly without justification,

and that

... if the defendant has suffered serious prejudice because of the delay, so as to impede substantially his ability to defend the suit, the trial court must balance the plaintiff's right to maintain his suit against the prejudice to the defendant. This matter we leave to the sound discretion of the trial court.

310 Md. at 308–309, 529 A.2d 352. The Court also observed:

Lest it be forgotten the defendant as well as the plaintiff has a responsibility to promote the orderly resolution of litigation. This Court will not countenance defendants who sit back and allow the prescribed period under the Rule to pass in the hope that the court will dismiss the case irrespective of the vitality of the litigation. The defendant must prod the plaintiff to answer interrogatories, respond to motions, etc. Litigation is not a game. The courts presume that the parties have instituted litigation based on serious and meaningful issues. Both sides have a responsibility to push for a prompt and satisfactory resolution of those issues. Consequently, in those circumstances where the defendant has averred that he has suffered prejudice because of the plaintiff's one-year delay, the trial court must include as a consideration in its weighing process the efforts made by the defendant to secure a resolution of the case.

310 Md. at 309, 529 A.2d 352.

This case differs from *Powell* in at least two respects. Rather than the clerk sending a notice of impending dismissal to the parties, appellee moved pursuant to Rule 2–507(c) to dismiss appellant's action for lack of prosecution. Moreover, here, the trial judge granted appellee's motion to dismiss; he did not deny appellant's motion to defer dismissal. The first difference raises the question whether a

party to the action may use Rule 2–507 as a means of obtaining dismissal of his or her opponent's case. When the clerk acts pursuant to the rule, he or she does so in furtherance of the court's goal of pruning its docket of dead cases. When a party acts pursuant to the rule, the effect may well be to prune the docket of a dead case; however, that party also has the significant additional purpose of pruning the docket of a case which potentially places the party at some risk, financial or otherwise.

Regarding the second distinction, we concede whether the court grants a motion to dismiss or denies a motion to defer dismissal, the effect is the same. We observe, however, that, procedurally, it may make a difference as to who has the burden of production and/or proof and, perhaps, as to the standard to be applied in ruling on the motion.

■ As we read *Powell*, Rule 2–507 provides a mechanism by means of which the court may rid its docket of dead cases. An essential functionary in the mechanism is the court clerk. *See* Rule 2–507(d). Under this mechanism, the court clerk monitors the docket and notifies the parties when a case reaches the age which, under subsection (c), would qualify it for dismissal. This notice triggers either an automatic dismissal or the filing of a motion by the plaintiff, which requires the court to determine the "litigious vitality" of the case.

■ The rule does not establish a procedure for the benefit of a civil defendant. *Ewachiw v. Director of Finance*, 70 Md.App. 58, 71, 519 A.2d 1327 (1987). Nor does it, explicitly or implicitly, provide for, or contemplate that, a party to the action, by moving to dismiss, may stand in the shoes of the court clerk. This does not mean, however, that a party may not move, pursuant to Rule 2–507, to dismiss an action. Subsection (c) is certainly broad enough to encompass, and by its terms does not preclude the possibility of, motions filed by a party. Such motions are not inconsistent with the purpose of the rule and do not prejudice the rights of a plaintiff. A motion filed by a party, like

the notice from the court clerk, does awaken the plaintiff. Thus roused, the plaintiff could, but would not have to, move to defer dismissal. The plaintiff's failure to file a motion for deferral in response to defendant's motion does not result in automatic dismissal because the moving party may not act for the court clerk; rather, the case could be dismissed only if the court were to grant the defendant's motion.

■ Permitting a party to move to dismiss pursuant to Rule 2–507(c) does not place any greater burden of proof on a plaintiff, nor does it adversely affect him or her insofar as the standard to be applied in ruling on any such motion is concerned. Where a plaintiff moves to defer dismissal, the plaintiff's burden is no different than if he or she had filed a motion in response to a notice from the court clerk. On the other hand, where he or she does not move to defer or the court chooses to consider the motion to dismiss, the burden of providing evidence to support dismissal is on the moving party. In that situation, while the standard applicable to a ruling on the motion could be no more lenient, it most probably would be more stringent, ordinarily requiring an allegation and proof of prejudice. *See Powell,* 310 Md. at 308, 529 A.2d 352.

■ Turning to the case *sub judice,* whatever the applicable standard and wherever the burden is placed, we hold that the trial judge did not abuse his discretion in dismissing appellant's action. In its motion to dismiss for lack of prosecution, and the memorandum accompanying it, appellee focused exclusively upon the effect of Md. Rule 2–507(c) to support its motion. In its response to appellant's answer, however, appellee stressed appellant's admission that, with the exception of filing petitions for writ of certiorari with the Court of Appeals and the Supreme Court, he had taken no action to prosecute his claim since this Court's mandate issued on April 12, 1984. In particular, appellee noted that appellant had not amended his cause of action, despite having been given leave to do so by this Court's

decision and that "there could be no cause of action absent the requisite amendment...." The significance of the latter point was revealed during the hearing when the court, in colloquy with counsel, asked "How is the other side supposed to know what your cause of action is if you are not going to make the amendment, if you are going to wait until after the case is tried to let them know what cause of action there is?", and further pointed out that appellee "cannot defend against a cause of action that has been ruled on by the Court of Special Appeals to be insufficient."

Appellant did not contend below, and he does not do so on appeal, that appellee mischaracterized the state of the docket or that he had taken action to prosecute his case after our mandate issued. Similarly, except to insist that he was waiting for the court to set a trial date, at which time he would have proceeded to prosecute his case, appellant did not explain the reason for the delay. Under these circumstances, we believe that the trial court could have found that appellant was not "... ready, willing, and able to proceed with the prosecution of his claim and that the delay in prosecution [was] wholly without justification", *Powell*, 310 Md. at 308, 529 A.2d 352, thus, finding that appellee met its burden in that regard.

There is no explicit averment by appellee that the delay has prejudiced it or impeded its ability to defend the suit. It is clear, however, from the record, that the court did consider the question of prejudice and, at least implicitly, found it to militate in favor of dismissing the action. Certainly the fact that no cause of action on which trial could be had [3] was in existence throughout the applicable period bears on that issue. So, too, does the further delay that would have been entailed had appellant been permitted to amend his action. The court did not abuse its discretion in relying upon these considerations. Furthermore, by filing

---

**3.** For this reason, it may have been proper for appellee to move to dismiss pursuant to Rule 2–322(b)(2) and, thus, achieve the same result.

the motion to dismiss, appellee fulfilled its obligation ". . . to promote the orderly resolution of litigation". *Powell,* 310 Md. at 309, 529 A.2d 352.

If the trial judge did not abuse his discretion in granting appellee's motion to dismiss, it would follow that he would not have abused his discretion had he denied appellant's motion to defer dismissal. We repeat, appellant made no attempt to justify the delay in his prosecution of his claim. His efforts to demonstrate a readiness, willingness, and ability to proceed, consisted, and still consist of, only an averment. Add to this the fact that he at no time, and has not to this day, amended his cause of action, despite having been granted leave to do so more than two years before, and with this, the case against him becomes overwhelming.

■ A word needs to be said about appellant's contention that failures attributable to counsel may not constitute a basis for dismissing a cause of action. For this proposition, appellant relies upon federal cases, namely *Lolatchy v. Arthur Murray, Inc.,* 816 F.2d 951, 953 (4th Cir.1987); *United States v. Moradi,* 673 F.2d 725, 728 (4th Cir.1982); *Chandler Leasing Corp. v. Lopez,* 669 F.2d 919 (4th Cir. 1982). He might have noted that *Powell* recognized that Rule 2–507 was not intended "to penalize plaintiffs for having lax attorneys". 310 Md. at 308, 529 A.2d 352. Nevertheless, the argument, in the context of this case, is without merit. We observe first that the *Powell* Court specifically refused to adopt the Fourth Circuit's interpretation of Federal Rule 41(b), the federal equivalent to our Rule 2–507. Thus, the standard set out in the cases on which appellant relies is not the law of Maryland. More importantly, however, the context of *Powell* demonstrates that no such absolute rule as advocated by appellant was enunciated. It is the laxity of attorneys prior to notice which is, in part, excused. Even then, such laxity is excused only to the extent that it can be demonstrated that the delay occasioned by the laxity was "not wholly without justification." When, however, notice has been given, awakening the party to the need to prosecute his claim,

further laxity on the part of counsel will reflect upon the readiness, willingness, and ability of that party to proceed.

In this case, appellant's attorney failed to amend appellant's cause of action, even after the motion to dismiss was filed. It was this failure that justified the court's findings that appellant was not ready to proceed with his claim and that the delay in prosecution was wholly without justification.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.